UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANDRE ALEXANDER #731077,

    Plaintiff,

v.                                                  Case No. 2:16-cv-85
                                                HON. PAUL L. MALONEY

UNKNOWN OJALA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff D'Andre Alexander, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging First Amendment retaliation claims and an Eighth Amendment excessive force claim against Defendant Ojala. Defendant has now moved a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (ECF No. 48.) Plaintiff has responded. (ECF No. 51.) This matter is now ready for decision. For the reasons stated below, the undersigned recommends that the Court grant Defendant's motion for summary judgment and dismiss this case.

Plaintiff's claims arose while he was incarcerated at the Chippewa Correctional Facility (URF). On November 23, 2013, Plaintiff spoke with Defendant regarding an issue he was having with prison staff. After Defendant told Plaintiff that he did not know how to resolve the issue, Plaintiff said that he was going to file a grievance. Defendant then replied, "we don't let that grievance sxxt fly around here!" (PageID.313) (alteration in original). The next day, Plaintiff filed the grievance and listed Defendant as the prison official he approached to resolve the issue. After learning that the grievance was filed, Defendant told Plaintiff that he was "going to have to learn the hard way." (PageID.313.) Later that day, Defendant issued Plaintiff a misconduct ticket

for being "out of place" because Plaintiff was in the weight pit without authorization. Following a hearing on December 2, 2013, Plaintiff was found guilty of the misconduct violation and lost seven days of privileges as his punishment.

On December 22, 2013, Defendant approached Plaintiff in the morning and said, "[t]he first chance I get, im [sic] going to set you straight!" (PageID.314.) Later that day, Plaintiff was in a fight with a fellow inmate named Nelson. Defendant was the first prison official to respond to the fight and radioed for assistance. In an attempt to break up the fight, Defendant discharged his Electronic Control Device (ECD) or Taser. Plaintiff was struck with two taser probes—one in the upper thigh and one in the lower back. According to Plaintiff, he was not a threat when Defendant discharged his taser because he was no longer fighting. Plaintiff claims that he was lying on his back, on the ground, while Nelson was on top of him. After the fight, Defendant escorted Plaintiff to segregation, where he removed the taser probes causing Plaintiff pain. Defendant also allegedly said, "Ive [sic] been waiting to get your ass!" (PageID.314.) Plaintiff alleges that he "suffered extreme pain from being unreasonably tazed for days, and experienced muscle cramps, [and] problems sleeping." (PageID.314.) On December 27, 2013, Plaintiff admitted to fighting and was found guilty during a misconduct hearing for fighting.[1]

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

---

[1] In his complaint, Plaintiff alleged that Defendant did not allow Plaintiff take a bathroom break during a prison work assignment. In his response brief, Plaintiff clarified that he was never seeking to recover damages for the denial of the bathroom break. (PageID.291.)

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. In addition, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones*, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

First, Plaintiff alleges that Defendant retaliated against him when Defendant issued a false misconduct ticket shortly after Plaintiff filed a grievance. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an

adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant argues that Plaintiff's retaliation claim involving the false misconduct ticket is barred by the "checkmate doctrine." In applying the so-called checkmate doctrine, the Sixth Circuit has held that "a finding of guilt upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 F. App'x. 656, 665 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)); *see also Patterson v. Godward*, 505 F. App'x 424, 425 (6th Cir. 2012); *McKinley v. Bowlen*, 8 F. App'x 488, 492-93 (6th Cir. 2001); *Clemons v. Cook*, 52 F. App'x 762 (6th Cir. 2002); *Lewis v. Turner*, 16 F. App'x 302 (6th Cir. 2001); *Burton v. Rowley*, 234 F.3d 1267 (6th Cir. 2000) (Table); *Harris–Debardelaben v. Johnson*, 121 F.3d 708 (6th Cir. 1997) (Table). Here, Plaintiff was found guilty of being "out of place" following a misconduct hearing on December 2, 2013. The evidence supporting a finding of guilt was Defendant's "clear and concise" testimony. (PageID.11.) Because some evidence supported finding Plaintiff guilty of the misconduct, Plaintiff's retaliation claim should be dismissed.

Plaintiff contends that the checkmate doctrine should not apply because he did not receive a fair hearing and the hearing officer was biased. However, even assuming that the checkmate doctrine did not apply in this case, the sanctions levied against Plaintiff did not amount to an adverse action. When assessing the adverse action prong, the relevant inquiry is whether the

Defendant's conduct "is capable of deterring a person of ordinary firmness" from exercising his constitutional rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc). In *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), the Sixth Circuit held that fourteen days loss of privileges, a short period in toplock, and extra duty are *de minimis* sanctions that would not deter a person of ordinary firmness from pursuing a grievance or other First Amendment protected activity. *Id.* at 273 (citing *Thaddeus–X*, 175 F.3d at 396-97). Further, several district courts have held that similar punishments did not amount to an adverse action. *See, e.g.*, *Gordon v. Benson*, No. 1:12-CV-295, 2012 WL 2522290, at *13 (W.D. Mich. June 28, 2012) (holding that a sanction of seven days loss of privilege did not amount to an adverse action); *Patterson v. Godward*, No. 2:08-CV-78, 2012 WL 652470, at *4 (W.D. Mich. Feb. 28, 2012), *aff'd*, 505 F. App'x 424 (6th Cir. 2012) (holding that a minor misconduct conviction, which carried a maximum sanction of fifteen days loss of privilege, did not amount to an adverse action); *Catanzaro v. Carr*, No. 10-CV-14554, 2011 WL 5008380, at *4 (E.D. Mich. Sept. 22, 2011), *report and recommendation adopted*, No. 10-14554, 2011 WL 5008357 (E.D. Mich. Oct. 20, 2011) (holding that seventeen days loss of privileges did not amount to an adverse action). Here, as a result of being found guilty of the misconduct, Plaintiff was sanctioned seven days loss of privileges[2]—half the length of the sanction in *Ingram*. Plaintiff's sanction also did not include a short-period in toplock or any extra duty like the sanction in *Ingram*. Therefore, in the opinion of the undersigned, this retaliation claim should be dismissed because the sanction did not amount to an adverse action that would deter a person of ordinary firmness from filing grievances.

---

[2] The misconduct hearing report states that Plaintiff suffered seven days loss of privileges as a result of being found guilty. (PageID.11.) In Plaintiff's response brief, he alleges that he suffered thirty days loss of privileges. (PageID.282.) However, in his complaint, Plaintiff declared under penalty of perjury that he suffered seven days loss of privileges. (PageID.6.) Therefore, the undersigned finds that Plaintiff suffered only seven days loss of privileges.

Next, Plaintiff alleges that Defendant used excessive force and retaliated against him when he shot Plaintiff with his taser and removed the probes. The undersigned will first address the excessive force claim. "The Eighth Amendment proscribes the unnecessary and wanton infliction of pain against prisoners." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Id.* (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)). "The subjective component focuses on the state of mind of the prison officials." *Id.* In the excessive force context, "the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). When determining whether the subjective component is met, courts must consider the following factors: (1) the need for the application of force; (2) the relationship between such need and the force used; (3) the threat reasonably perceived by the prison official; and (4) any efforts undertaken to temper the severity of the response. *Id.* (citing *Hudson*, 503 U.S. at 7).

"The objective component requires the pain inflicted to be 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "This component requires a 'contextual' investigation, one that is 'responsive to contemporary standards of decency.'" *Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014) (quoting *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9).

According to the incident reports, Defendant was the first prison official to respond to the fight between Plaintiff and Nelson. In an attempt to stop the fight, Defendant first yelled at the prisoners to stop fighting.[3] After both prisoners refused to stop fighting, Defendant used his taser device. He struck Plaintiff first—hitting him in the upper thigh and lower back. He subsequently used his taser a second time, hitting Nelson. After being tased, Plaintiff complied with Defendant's verbal commands and was properly restrained. Defendant subsequently escorted Plaintiff to segregation. Meanwhile, Nelson refused to comply with prison officials' orders and was shot with a stun gun several more times by a different prison official. Eventually, Nelson was restrained and taken to segregation.

Plaintiff states that Defendant tased him while he was being attacked by Nelson. Plaintiff alleges that when he was tased, he was lying on his back, on the ground, while Nelson was on top of him. Plaintiff further alleges that, while removing the taser probes from Plaintiff, Defendant said, "Ive [sic] been waiting to get your ass!" (PageID.314.) Because he claims that he was no longer fighting and not a threat, Plaintiff contends that Defendant's use of the taser was unreasonable and excessive.

It is undisputed that Plaintiff was involved in a fight. He admitted to fighting with Nelson and was found guilty during a misconduct hearing.[4] Defendant was the first prison official to respond to the fight. Defendant first tried to stop the fight by yelling verbal commands. Although Plaintiff claims that he was on his back no longer fighting, Nelson was on top of him and continued to fight. Thus, Defendant could reasonably perceive that the fight was ongoing.

---

[3] Defendant asserts that Plaintiff admitted during his deposition that he did not know if Defendant instructed him to stop fighting because he was "dealing with this altercation." (PageID.223.) However, the pages of the deposition transcript that Defendant submitted in Exhibit B (ECF No. 49-3) do not appear to be the correct pages and do not support this assertion.

[4] The undersigned also notes that Plaintiff apparently broke his hand during this fight. Although it is not part of the record in this case, in *Alexander v. Fillion*, 2:16-cv-64, Plaintiff alleges that he received inadequate medical treatment for his hand that he broke during a fight on December 22, 2013.

Moreover, Plaintiff's assertion that he was on his back is undermined by the undisputed fact that one of the taser probes was lodged in his lower back. Defendant discharged his taser to stop the fight. Plaintiff claims that he suffered extreme pain, experienced muscle cramps, and had trouble sleeping following the incident. However, Plaintiff did not suffer any significant, long-term injuries. After considering the need to apply force to stop the ongoing prison fight, the relationship of the need and amount of force used, the relatively minor injury inflicted, and the attempt to stop the fight before using force, the undersigned finds that no reasonable jury could find that Defendant acted with the culpable state of mind to meet the subjective component. *See Williams*, 631 F.3d at 383. Instead, Defendant's use of force was applied in a good-faith effort to maintain and restore discipline during a fight between two prisoners.

Plaintiff complains that Defendant and his co-workers lied in the incident reports; however, Plaintiff's arguments are not entirely clear and his arguments contradict one another. For example, Plaintiff states: "Defendant Ojala was anxious to retaliate on Plaintiff; thats [sic] why he shot Plaintiff before shooting the other guy." (PageID.287.) However, Plaintiff later claims that Defendant could not have shot both Nelson and himself because if Defendant shot both prisoners, (1) prison officials would not have had to use the stun gun on Nelson as Defendant's taser probes would still have been lodged in Nelson; and (2) Defendant would have had to escort both prisoners to segregation because his taser probes would be stuck in both prisoners. Based on the record, including Plaintiff's conflicting statements and the incident reports, the undersigned finds that no reasonable jury could conclude that Defendant shot only Plaintiff with his taser.

Next, Plaintiff complains that the video of the incident provided during discovery did not show the entire incident. According to Plaintiff, the video, which was apparently taken from a video camera connected to Defendant's taser, only showed Nelson being tased and

-8-

subsequently escorted to segregation. Plaintiff contends that the video was altered by either Defendant, Michigan Department of Corrections, or the Attorney General's office. The undersigned never viewed this video because it was never submitted to the Court. However, in response to Plaintiff's discovery requests, Defendant stated that this was the entire video. Plaintiff has failed to submit any admissible evidence to support his assertion that the video was altered.

Finally, Plaintiff attempts to create a genuine issue of material fact by pointing to evidence that is not supported by, or part of the record. For example, Plaintiff mischaracterizes Exhibit 6 to support his assertions that he "was on the ground when he got shot." (PageID.289.) Exhibit 6 is a critical incident report from a prison official who responded to the fight after Plaintiff was tased. The prison official stated: "I responded to a fight called on the round unit yard when I arrived both prisoners were on the ground after C/O Ojala deployed his ECD." (PageID.312.) In addition, Plaintiff states that he will be able to produce a witness who observed the taser incident. However, Plaintiff did not identify the witness or attach an affidavit from the alleged witness. Plaintiff cannot rely on an unnamed potential witness to create a genuine issue of material fact. Therefore, the undersigned finds that there is no genuine issue of *material* fact.

Although the undersigned must view the evidence in the light most favorable towards Plaintiff, the undersigned will not adopt a story which is contradicted by the record and not supported by any admissible evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Therefore, in the opinion of the undersigned, the Court should dismiss Plaintiff's excessive force Eighth Amendment claim because no reasonable jury could find that Defendant acted with the culpable state of mind to satisfy the subjective component.

The undersigned next addresses Plaintiff's retaliation claim stemming from the same taser incident. As stated above, in order to set forth a First Amendment retaliation claim, a

plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Relying on the same reasoning discussed under Plaintiff's Eight Amendment claim, the undersigned finds that the adverse action of tasing Plaintiff was not motivated by Plaintiff's grievance that he filed the previous month. Instead, Defendant tased Plaintiff in an attempt to stop an ongoing fight between two prisoners in the yard. In addition, although Plaintiff alleges that Defendant "snatched" out the taser probes and said that he had been "waiting to get" him, Plaintiff did not suffer any significant injuries and was examined by a nurse shortly thereafter. In the opinion of the undersigned, the removal of a taser probe by a prison official does not constitute as an adverse action that would deter a person of ordinary firmness from engaging in that conduct.

Defendant alternatively moves for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. *Id.* The court may consider either approach without regard to sequence. *Id*. at 236. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendant is entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 48) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore,* 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  August 30, 2017

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE